## LAFAYETTE STREET RAILWAY, INCORPORATED, *v.* ULLRICH.

[No. 13,147. Filed April 26, 1929. Rehearing denied November 22, 1929. Transfer denied February 13, 1931.]

*Stuart, Simms & Stuart,* for appellant.

*E. B. Davidson, Floyd A. Sterrett, Clyde H. Jones* and *D. M. Patrick,* for appellee.

NICHOLS, J.—Action by appellee against appellant to recover damages for personal injuries alleged to have been received by appellee on September 1, 1923, while riding as a passenger in a street car alleged to have been owned and operated by appellant. Appellee alleged in her complaint that appellant was negligent in three particulars: (1) That the motorman and conductor in charge of appellant's one-man, pay-as-you-enter, car, was inexperienced and incompetent in the operation of passenger cars, which fact it was alleged appellant well knew; (2) that appellant permitted its passenger car to be operated when out of repair; that it was out of repair, in this, that it would start suddenly with a jerk when operated in the usual way, the particular defect being unknown to appellee, but alleged to have been known to appellant prior to placing the car in service on the date of the alleged injury; and (3) that the person in charge of said car for and on behalf of appellant was negligent in starting said car with an unusual and extraordinary jerk and in failing to warn appellee of the danger therefrom, and in attempting to start said car before appellee had been seated.

Appellee points out that her complaint, in addition to the above alleged acts of negligence, contains the general charge that, before appellee had an opportunity of taking a step in the direction of that part of the car in which the seats were located, the conductor thereon, without giving any warning to appellee of his intention so to do, and in disregard of his duties and obligations to

her and other passengers, carelessly and negligently caused said street car to be started forward suddenly and with an unusual and extraordinary jerk. But, as it seems to us, the above three specifications sufficiently set forth the negligence complained of.

Appellee further alleged that, as a result of the negligence of appellant, she was thrown violently to the floor of the car and injured in her back, spine and other portions of her body. Damages were sought in the sum of $15,000.

There was an answer in general denial. The issues were submitted to a jury for trial, which, in the first instance, returned a verdict as follows (omitting caption and signature): "We, the jury, find for the plaintiff and assess her damages at thirty-eight (3800) dollars."

Following the reading of the verdict, the court inquired of the jurors whether or not that was their verdict, and the foreman made reply as follows: "Yes, your honor." Whereupon, the court inquired of the parties whether or not they desired to poll the jury and they respectively replied that they did not. Thereafter the court said to the jury, "You are now discharged."

After all the members of the jury but one had left the jury box and the courtroom, the court, upon the request of appellee, and over the objection of appellant, caused the bailiff to resummon the jury and place them in the jury box, and, upon all the jury having reassembled in the jury box, the court, at the request of appellee, and over the objection and exception of appellant, gave to the jury the following written instruction, to wit: "Your attention is called to the fact that in your verdict appears the written words 'thirty eight' while in figures is written 3800. You will retire to your jury room, reconsider your verdict and return the same into court. I herewith hand you new forms of verdict, one to be used

in case you find for the plaintiff and one to be used in case you find for the defendant."

The jury then retired under the custody of the bailiff sworn at the inception of the trial, and, after deliberation, again returned into open court a verdict, which, omitting caption and signature, reads as follows: "We, the jury, find for the plaintiff and assess her damages at thirty-eight hundred dollars."

Subsequently, appellee filed her verified motion to correct and reform the verdict with supporting affidavits of the clerk and jurors. Appellant filed its motion for a *venire de novo*, and thereafter filed its motion and causes for a new trial. The court sustained appellee's motion to correct and reform the verdict of the jury so as to read as follows: "We, the jury, find for the plaintiff and assess her damages at thirty-eight hundred ($3800.00) dollars."

The court overruled appellant's motion for a *venire de novo*, also its motion for a new trial. Judgment was rendered on the verdict as corrected and reformed, in favor of appellee and against appellant for $3,800, from which this appeal, appellant presenting that the court erred in overruling appellant's objection to the giving to the jury, after the first verdict had been received and the jury discharged, the instruction tendered by appellee, directing the attention of the jury to the discrepancy in the verdict between the written words "thirty-eight" and the figures "3800," and directing the jury to retire and reconsider their verdict and return the same into court; in sustaining appellee's motion to correct and reform the verdict and in ordering that said verdict be corrected and reformed; in overruling appellant's motion for a *venire de novo;* in overruling appellant's motion for a new trial, under which causes therefor, specifically relied upon, are hereinafter considered; and, in entering judgment in favor of appellee and against appellant.

It is appellant's contention that the court erred in overruling its objection to giving to the jury, after the verdict was first returned and the jury discharged, the instruction tendered by appellee and directing the attention of the jury to the discrepancy in the verdict between the written words "thirty-eight" and the figures "3800," and directing the jury to retire and reconsider its verdict. But we do not see how the action of the court so complained of deprived appellant of any substantial right or in any way operated to its prejudice. Even if it may be said that such action of the court was extra judicial, it furnished to the court reliable and credible record evidence of the intention of the jurors which the court had a right to consider in construing the verdict, which was ambiguous on its face. As was said in *Lake Erie, etc., R. Co.* v. *Griswold* (1920), 72 Ind. App. 265, 270, 125 N. E. 783, it behooves the parties in an action to see that a proper verdict is returned before the jury is discharged, but it does not follow from this that, by proper procedure, verdicts, which from inadvertence or mistake are imperfect, may not be made perfect or construed in harmony with the intentional finding of the jury. In this case, there was a verified motion filed by appellee to correct and reform the verdict with supporting affidavits of the clerk and jurors. In the case of *McGlone* v. *Hauger* (1914), 56 Ind. App. 243, 260, 104 N. E. 116, the verdict read: "We, the jury, find for the plaintiff and assess her damage at fifteen (1500.00) dollars." After the verdict was returned, and before judgment was rendered thereon, appellee filed a motion for judgment for $1,500 on the verdict, filing, at the same time, affidavits in support of the motion of nine of the jurors in the cause and of the clerk of the court who read the verdict when it was presented, and of two of the attorneys of appellee present at the reading, to the effect that the jurors intended to return a verdict for appellee

for $1,500, and that the clerk so read it, and all affiants stated that they understood it to be a verdict for $1,500. After stating the general rule that affidavits of jurors cannot be received to prove their misconduct, or any act done by them which would tend to impeach or overthrow their verdict, the court then stated that such rule did not affect the power of the court to accept the evidence of the jurors to perfect the verdict, nor to correct any inadvertence or mistake that had occasioned the entry of a verdict which was not in accord with the finding of the jury. A long list of cases is cited to sustain the court's holding.

The McGlone case is approved and followed in *Town of Hobart* v. *Casbon* (1924), 81 Ind. App. 24, 142 N. E. 138.

It appears by the record that the second verdict, returned by the jury after it had been discharged and reassembled, was not relied upon as a basis for the judgment herein, but that the judgment was upon the first verdict as construed and perfected on appellee's motion. Certainly, appellant has no occasion to complain that the court, in construing and perfecting the verdict, had, not only the affidavits of the jurors, but the further assurance of the jurors when reassembled, as to their attention. Appellant's objection to the court's action in instructing the jury as to the discrepancy in the verdict was properly overruled, and the court did not err in sustaining appellee's motion to correct and reform the verdict, nor in overruling appellant's motion for a *venire de novo*.

Sixty-four instructions, including those given by the court on its own motion, were before the court for its consideration: Of this number, 34 instructions were tendered by appellant, 24 of which were given by the court and 10 refused. The action of the court in giving or refusing to give respectively a large number of the in-

structions before it is challenged by appellant, but, to consider the separate challenge of the action of the court as to each instruction so given or refused would extend this opinion to an undue length. We shall, therefore, consider only such contentions and errors as to the instructions as we deem to be substantial.

The court, by its instruction No. 5, undertook to define "burden of proof," but we must agree with appellant that the court wholly failed in its effort. We do not see, however, that appellant was harmed by the instruction. As a definition of "burden of proof," it was simply meaningless. Appellant contends that the instruction contradicts instruction No. 19 given by the court on its own motion. We do not so understand. That instruction states that the phrase "burden of proof" means that the party on whom such burden rests shall establish the truth of the particular fact or facts involved by a preponderance of all the evidence. Instruction No. 5 has no such meaning as this nor contrary thereto. As to the subject-matter of "burden of proof," it was simply without force.

Instruction No. 14 given by the court on its own motion was on the subject of proximate cause, but in its subject-matter refers to an intervening agency of some third person as affecting proximate cause, and there is no evidence whatever as to any person as an intervening agency and the instruction was, therefore, outside the issue. The latter part of the instruction informed the jury that, if the injury would not have occurred without the doing of the original wrongful act, such act does not cease to be the proximate cause of such injury merely because some other person contributed to or aided such original wrong. For the reasons above, this part of the instruction is also without the issue. There were no parties involved in this accident

other than appellant, by its motorman, and appellee, but there is no evidence whatever that appellee in any way contributed to the injury which she suffered, and the jury could not, therefore, have inferred that the third person referred to in the instruction as an intervening agency was appellee. We criticise the instruction as being outside the issue and unauthorized by any evidence, and it should not have been given, but we do not see that appellant was harmed thereby.

Instruction No. 20 told the jury that, if it found for appellee, it could assess in her favor such damages, within the amount claimed, as she is shown by the evidence, and under the law as given by the court in these instructions, to have sustained, and which would be a compensation to her for any loss or injury occasioned which was the result of appellant's conduct. It is to be observed that this instruction, standing alone and without its restrictive phrase, and without being construed along with the other instructions, would have authorized the jury to consider the entire evidence in determining the amount of damages that she should recover. This evidence includes the fact that appellee's husband was deceased, and that, at the time, she was a widow; that her family consisted of five children, including twins; that her husband had been a truant officer in the city for a long period of time; that, at the time of her injury, she was keeping roomers, and that she had worked as chambermaid at a hotel because she was in need of money; that, before the death of her husband, she did little, if any, work because she did not have to, but, after his death, she was compelled to work. There is no contention that these facts were improperly admitted as evidence, and some of them were developed by appellant in its cross-examination of appellee and her witnesses, and some by appellee in the due course of the evidence. But, while such facts were properly in evidence, it does

not follow that they were proper elements for the jury to consider in their assessment of the amount of damages. In *City of Delphi* v. *Lowery, Admx.* (1881), 74 Ind. 520, 527, 39 Am. Rep. 98, evidence was allowed to go to the jury of the destitute condition of the family of the deceased, and an instruction directed the jury to consider all of the facts in determining the amount of damages; but the court held that, in so considering all the facts, they were required to consider the fact that appellee's intestate left his family in poverty and want, and this was an element which ought not to have entered into the consideration of the jury. The court stated that there were not two measures, one for the kinsmen of the poor, and one for the kinsmen of the rich, but that there was one standard only for the rich and poor alike.

In *Broadstreet* v. *Hall* (1904), 32 Ind. App. 122, 127, 69 N. E. 415, after properly instructing the jury as to the measure of damages, the court, then, by the same instruction, told the jury that, in determining the damages, it might consider all the facts and circumstances proved in the case. This was held to be error, the court saying that it is not the province of the jury to determine the amount of the recovery from all the facts, but only from such facts as form proper elements for the consideration of the jury in computing damages.

In *Stewart* v. *Swartz* (1914), 57 Ind. App. 249, 106 N. E. 719, an instruction told the jury to take into consideration "all the facts in evidence before it" in awarding damages. There was evidence that the plaintiff was deaf and dumb, that his mother was a widow living in rented property and the implication was sought to be brought out that plaintiff was his mother's only support. It was in evidence that the defendant owned a farm, that he had not gone to see plaintiff or his mother after the accident, and that he had not given them any money. It was held that these facts in evidence were not proper

to be considered in estimating damages, and that the instruction was, therefore, erroneous. Other authorities to the same effect are: *Mesker* v. *Leonard* (1911), 48 Ind. App. 642, 96 N. E. 485; *Sanitary Can Co.* v. *McKinney* (1913), 52 Ind. App. 379, 100 N. E. 785; *Louisville, etc., Traction Co.* v. *Cotner* (1919), 71 Ind. App. 377, 382, 125 N. E. 78. The damages which may be recovered must be limited to the injuries resulting from the negligent conduct of appellant as averred in the complaint, and proved by evidence on that issue. *Emerson Brantingham Co.* v. *Growe* (1922), 191 Ind. 564, 572, 133 N. E. 919; *Ohio Electric Co.* v. *Evans* (1922), 77 Ind. App. 669, 679, 134 N. E. 519; *Indianapolis, etc., Traction Co.* v. *Sherry* (1917), 65 Ind. App. 1, 116 N. E. 594; *Terre Haute Electric Co.* v. *Roberts* (1910), 174 Ind. 351, 355, 91 N. E. 941.

It seems clear to us that, under these authorities, the instruction, without restriction and without being construed along with other instructions, would have been error; but it therein appears that the court told the jury thereby that if it found for appellee, it could assess in her favor such damages, within the amount claimed, as she is shown by the evidence and *under the law as given by the court in these instructions, to have sustained.* It thus appears that the jury was told to look to other instructions for the purpose of determining the law, by which to fix the amount of damages to be assessed. By instruction No. 23, tendered by appellant and given by the court, the jury was informed that, in determining the damages, it could consider only such damages as flowed from and were the immediate result of the acts complained of. In the same instruction, the jury was also told that it had no right to indulge in conjectures or speculations not supported by the evidence, and that it should not permit any consideration of sympathy for appellee to influence its ver-

dict. By instruction No. 25, the jury was told that it could not find any damages that had not been alleged and proved by a preponderance of the evidence; that it would not be permitted to assess damages at a larger sum than appellee had actually sustained; and that the burden was upon appellee to prove each element of damage claimed by her. By instruction No. 32, tendered by appellant and given by the court, the jury was told that, if appellant was liable at all in this action, it was liable only to the extent that appellee had proved by a preponderance of the evidence that her alleged injuries were due to the negligent acts of appellant. By instruction No. 35, tendered by appellant and given by the court, the jury was told that the fact on the one hand that appellee was a woman and a widow, and, on the other hand, appellant was a corporation, should not be considered by the jury in any manner as affecting the determination of the issue involved. These instructions, each and all of them, were referred to by the court as the law by which the jury was to be controlled, and with instruction No. 20 so environed, restricted and qualified, there was no error in giving it.

Appellee's instruction No. 1, given by the court, instructed the jury that, although a common carrier of passengers is not an insurer of their safety, it must exercise care consistent with its mode of conveyance and the practical prosecution of its business for the safety and protection of its passengers, and that any violation of this duty to a passenger on the part of the carrier is negligence, and if such negligence is the direct or proximate cause of an injury to a passenger, who is herself free from negligence, the carrier is liable. This instruction was taken almost *verbatim* from the cases of *Indiana Union Traction Co.* v. *Keiter* (1910), 175 Ind. 268, 275, 92 N. E. 982, and *Louisville, etc., Traction Co.* v. *Korbe* (1910), 175 Ind. 450, 454, 93 N. E. 5, 94 N. E.

768, except that in those cases it is stated that "the law requires of it the exercise of the highest degree of care," etc. This statement of the law, in so far as it required the highest degree of care, was disapproved in *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 121 N. E. 655, 124 N. E. 737, 32 A. L. R. 1171. The instruction in question, as given, was not erroneous, but it was incomplete as to the degree of care required. If appellant desired an instruction more definite in this particular, it was its privilege to have tendered the same. What we have said with reference to the instruction No. 1, tendered by appellee and given by the court at her request, applies with equal force to her instruction No. 6, which was given by the court, and which was of the same tenor.

Appellant, in criticising divers instructions given by the court, and which we deem it unnecessary to set out, states the general rule of law that the various issues and questions depending upon the evidence which contains matters competent for one purpose, but not competent for another, must be determined by a consideration, not of all the facts and evidence and circumstances disclosed, but only of that portion thereof germane to the particular issue. If it may be said that instructions given by the court were erroneous in that they directed a consideration of all the facts and evidence and circumstances, instead of such portions thereof as were germane to the particular issue then involved, still appellant may not be heard to complain of such error, for it tendered instructions impressed with the same defect. A striking example is instruction No. 13 tendered by appellant. That instruction charged the jury on the question of contributory negligence to consider "all the evidence in the case, whether introduced by the plaintiff or the defendant, and all the facts and circumstances shown by the evidence, and if the jury

then, from a consideration of all the evidence, and all the facts and circumstances in evidence, found that the preponderance thereof shows that the plaintiff was guilty of negligence contributing to her injury, then your verdict should be for the defendant." Thus, it appears that appellant, by this instruction—and there are others tendered by it—embodied the same principle as that to which it so vigorously objects when appearing in instructions given by the court. It is true that this particular instruction was refused by the court, but it is the rule of law that error is invited where a party prepares and tenders an improper instruction with the request that it be given, and, on appeal, he cannot be heard to complain of the court's action in giving an instruction containing the same principle as the instruction tendered even though the instruction tendered was refused. *Cleveland, etc., R. Co.* v. *Dixon* (1911), 51 Ind. App. 658, 664, 96 N. E. 815; *Cleveland, etc., R. Co.* v. *Simpson* (1914), 182 Ind. 693, 103 N. E. 301, 108 N. E. 9; *Marion Trust Co.* v. *Robinson* (1915), 184 Ind. 291, 110 N. E. 65; *Eacock* v. *State* (1907), 169 Ind. 488, 82 N. E. 1039.

Appellant's challenge of the action of the court as to other instructions given, or tendered and refused, does not present such semblance of harmful error as to justify consideration herein.

Appellee called as her witness Dr. McClelland, and, after having him identify certain radiographs, which he had taken of appellee's body, asked him to state the condition of the pelvic bones of appellee as he determined them to be from the radiograph. Over appellant's objection, the witness was permitted to answer fully this question and subsequent questions with reference thereto. It is appellant's contention that the reception of this evidence over its objection and exception, relating as it does to the subject of injury and damage, is reversible error, for the reason that it violates

the general rule requiring the production of the best evidence; because it violates the particular rule of evidence requiring a witness, even an expert, in giving an opinion, either directly or hypothetically, to base the same upon facts of which the record must contain some evidence in order that the jury may have an opportunity to test the correctness of the witness' conclusions; that the party against whom such evidence is offered has the right to require the introduction of such documents or instruments in evidence for the purpose of having an intelligent basis for cross-examination, and for the further purpose, where the matters are involved in the realm of expert testimony, of submitting such documents or instruments to such experts as the party may choose to call. Appellant cites, to sustain its contention, *Elzig* v. *Bales* (1907), 135 Iowa 208, 112 N. W. 540; *Lang* v. *Marshaltown, etc., Co.* (1919), 185 Iowa 940, 170 N. W. 463; *Daniels* v. *Iowa City* (1921), 191 Iowa 811, 183 N. W. 415; *Jolman* v. *Alberts* (1916), 192 Mich. 25, 158 N. W. 170; *Marion* v. *Coon Construction Co.* (1915), 216 N. Y. 178, 110 N. E. 444, 445, 446; *Hammond* v. *Bloomington Canning Co.* (1914), 190 Ill. App. 511. We have examined these cases and we have no intention of running counter thereto. They state the law as we understand it. As a general rule, we do not sanction a ruling of the trial court permitting a witness to give evidence, over a proper objection, of what he found to be shown by X-ray plates, but here the radiographs were present in court, and in the hands of the witness at the time he was testifying concerning the same. They remained in his hands, and, we may say, under the control of the court, while he was being cross-examined by appellant, and appellant referred to them as in his hands while conducting such cross-examination. There was nothing to prevent appellant from offering such plates in evidence as a part of the cross-examination. Not

having done so, as it seems to us, it may not now be heard to complain that such plates were not introduced in evidence, and that the witness was permitted to testify concerning them while in his hands, although not in evidence.

Appellant urges that the evidence is insufficient to sustain the verdict and that it is, therefore, contrary to law, but there was evidence that appellee was injured in the manner as alleged in her complaint, and, while there was evidence contradictory thereto, it is not the province of this court to weigh the evidence.

We cannot say, under all the evidence in this case, that the damages were excessive.

Affirmed.

ON PETITION FOR REHEARING.

NICHOLS, J.—Appellant is so insistent that the court committed reversible error in the admission of the evidence of Dr. McClelland that we conclude to give reasons why the admission of such evidence, if error, was not reversible error.

It appears by the evidence that the radiographs in question were not susceptible of being understood by one not skilled in their interpretation, and, without explanation, would be unintelligible to the jury. Under such conditions, the best evidence was not the plates themselves, but the testimony of one skilled in their interpretation. *Marion* v. *Coon Construction Co.* (1915), 216 N. Y. 178, 110 N. E. 444; *Colesar* v. *Star Coal Co.* (1912), 255 Ill. 532, 99 N. E. 709, 712. In the first case cited, it was held that such plates were not admissible in evidence because they were unintelligible to the jury. Two physicians preceded Dr. McClelland on the witness stand, and testified concerning the condition of appellee's pelvic bones as disclosed by radiographs

taken of her body. After being properly identified, these radiographs were offered in evidence, but appellant objected to their admission on the ground that they could not be interpreted by an untrained eye, and that a jury composed of laymen would be unable to understand them. The offer was then withdrawn, but, later, it was made again, when appellant again objected, for the reason that the radiographs were of such a nature that the jury would be unable to interpret them, and that they would be unintelligible to the jury, and the objection was sustained. In the opinion of experts, all of these radiographs, including the ones about which Dr. McClelland testified, would have been unintelligible to the jury, and, on this ground, the court excluded the first ones offered, and now appellant complains of permitting Dr. McClelland to testify concerning the facts disclosed by the radiographs taken of the same part of appellee's body, at a subsequent time, by a competent operator, under essentially the same conditions, without first offering and having the plates admitted in evidence. Appellant's inconsistent position is manifest. The error, if any, was invited.

Appellant very forcefully challenges our statement in the original opinion to the effect that instructions 1 and 6, tendered by appellee and given by the court were not erroneous but were incomplete as to the degree of care required. We have given these instructions further consideration, and have to say that we conclude that we were not justified in making such statements concerning them, and that neither of the instructions was erroneous nor was it incomplete. Instruction No. 1 stated that a common carrier must exercise care *consistent* with the mode of its conveyance and the practical prosecution of its business for the safety and protection of its passengers. Instruction No. 6 states that a passenger has the right to assume that a carrier will exercise care *consistent* with the mode of its convey-

ance and the practical prosecution of its business for the safety and protection of its passengers. Appellant again calls attention to the case of *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 121 N. E. 655, 124 N. E. 737, 32 A. L. R. 1171, where the kind of care required to be exercised by the carrier is defined as "due care," "ordinary care," or "reasonable care," the court stating that such terms are regarded by the courts as having the same significance. But, in the case of *Evansville, etc., R. Co.* v. *Hoffman* (1914), 56 Ind. App. 530, 538, 105 N. E. 788, so confidently relied upon by appellant, we find another definition of "ordinary care," which, as it seems to us, is not inconsistent with the "care" required in the challenged instructions. It is there stated that "the term ordinary care embodies the idea that the care required in any given case is *commensurate* with the known or apparent danger." (Our italics.) In the challenged instructions, the care required was that which was *consistent* with the mode of conveyance and practical prosecution of its business for the safety and protection of its passengers. As it seems to us, any distinction between care that was *consistent* with certain conditions, and care that was *commensurate* therewith is simply a distinction without any substantial difference. In the light of the definition of "ordinary care" as found in the Evansville case, we hold that error, if any, in instructions Nos. 1 and 6, tendered by appellee and given by the court, was not reversible.

Petition for rehearing denied.