FRANCES L. PINKERTON *v.* STATE OF INDIANA.

[No. 770S142. Filed June 6, 1972. Rehearing denied August 7, 1972.]

*Richard M. Mehl, Mehl, Mehl and Beeson,* of Goshen, *John D. Shuman,* of counsel, of Elkhart, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Deputy Attorney General, for appellee.

PRENTICE, J.—The defendant (appellant) was charged by an indictment with involuntary manslaughter and operating a motor vehicle under the influence of intoxicating liquor and thereby causing a death, she entered a plea of not guilty and was convicted in a trial by jury upon both counts. She was sentenced to imprisonment for not less than two years nor more than twenty-one years upon the charge of involuntary manslaughter and to a term of not less than one nor more than two years on the second charge, said terms to run concurrently. Additionally, the defendant was fined in the sum of Twenty-Five Hundred Dollars ($2500.00).

The first three issues raised by the defendant relate to the sufficiency of the evidence and challenge the sufficiency of the evidence as to the necessary findings (1) that she was under the influence of intoxicating liquor, (2) that she was driving the automobile at the time of the fatal collision, and (3) that the person killed in the collision was the person named in the indictment.

Upon the issue of the sufficiency of the evidence, this Court will consider only that evidence most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. *Fuller* v. *State* (1971), 256 Ind. 681, 271 N. E. 2d 720; *Gibson* v. *State* (1971), 257 Ind. 23, 271 N. E. 2d 706; *Lambert* v. *State* (1969), 252 Ind. 441, 249 N. E. 2d 502.

The conviction will be affirmed if, from that viewpoint, there is substantial evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Fuller* v. *State, supra; Gibson* v. *State supra; Taylor* v. *State* (1971), 256 Ind. 170, 267 N. E. 2d 383.

The evidence, viewed most favorably to the State, discloses the following. The defendant resided in the city of Goshen, where she operated a beauty salon in her home. During the morning of February 11, 1969, she took five or six one-half grain tablets of phenobarbital and drove to South Bend, where she visited a beauty shop supply house and a shopping center. Her time of departure from the shopping center was not established, but by her own admissions at the trial, she drank approximately one and one-half ounces of whisky directly from a bottle while seated alone in her automobile in the shopping center parking lot, just before starting back to Goshen. She further testified that she had taken the whisky from home that morning, to keep her husband from drinking it. Officer Berry testified that when he interrogated the defendant upon the subject of her drinking and asked her how much she had drunk, she said that she didn't know, about half a pint. Later, during this interrogation, other officers and the defendant's husband participated. Her husband, on this occasion, told the officers that he had purchased a one-half pint bottle of whisky the night before the accident and that both he and the defendant had drunk some of it that night. It is the defendant's position that the only conclusion to be drawn from this testimony is that the defendant drank part of a one-half pint bottle of whisky on the day of the accident and that since this is consistent with her testimony that she drank "an ounce or maybe a little more," the jury was bound by her later statement. Although we do not think this is determinative upon the issue whether or not the defendant was "under the influence" at the time of the accident, we, nevertheless, disagree. From the foregoing, the jury would have been warranted in believing that at some time between leaving home at approximately 11:30 a.m. and the time of the accident at approximately 4:30 p.m., the defendant consumed a half pint of whisky. From the foregoing and subsequent events and testimony, which will be hereinafter related, the jury would also have been warranted in concluding that the

defendant was "under the influence" at the time of the accident, even if it did not consider Officer Berry's testimony that she said she had drunk one-half pint.

Eye witnesses to the accident were unable to identify the driver of the automobile, except that she was a woman and the only occupant of the vehicle, they related that she stopped up the road one hundred or so yards from the point where the boy was struck, alighted and looked back, removed the bicycle from the front of her automobile, got back in and drove away. Neither was the exact model and color of the automobile determined by the eye witnesses, but their general dscription matched that of the defendant's automobile. Approximately one-half hour later, witness Green saw an automobile which matched the same general description driving erratically along the same road upon which the accident had occurred and at a point between the scene of the accident and the city of Goshen. Under police interrogation, the defendant's husband testified that he returned home from work at approximately 6:00 p.m. on the day of the accident and that at this time the defendant was at home in a drunken condition. The defendant admitted that she drove to South Bend over the road upon which the accident occurred. However, she said that she "blacked-out" immediately after drinking the whisky in the shopping center parking lot and remembered nothing from that moment until she walked into her home. Witness Harris conducted laboratory tests upon the bicycle and the defendant's automobile and testified that upon the basis of such tests, it was his opinion that the automobile and the bicycle had come into forcible contact with each other.

The decedent named in the indictment was John Daniel Wenger. Witnesses Corn, Neece and Mobley, present at the scene, saw a boy on a bicycle struck by an automobile. Witness Gerhart, who was personally acquainted with John Daniel Wenger, was in the immediate area at the time of the accident, and hearing about it, he went to the scene. There he saw the decedent laying unconscious and in-

jured along side the road and also saw him placed into the ambulance. His shoes were torn and his bicycle, which was nearby and which the witness also recognized, was in a wrecked condition. Witness Lawson, the ambulance driver, shortly after the accident removed the victim, a boy of twelve or thirteen years old, from the scene and delivered him to Doctor Fosbrink, at the hospital. Dr. Fosbrick, in the presence of witness Lawson, examined the boy, pronounced him dead and instructed the witness to deliver the body to the morgue, which he did. Proof of the corpus delicti may be made by circumstantial evidence. *Ellis* v. *State* (1969), 252 Ind. 472, 250 N. E. 2d 364.

It is our opinion that there was sufficient evidence from which the jury could find, beyond a reasonable doubt, that at the time of the accident the defendant was driving her automobile, was then under the influence of intoxicating liquor, that then and there her automobile struck the decedent named in the affidavit and thereby caused his death.

Issue four of the defendant's appeal concerns the propriety of the ruling of the trial judge in denying her motion to permit the jury to view the automobile which had been involved in the accident. Defendant, by reason of her professed "black-out" had no knowledge of whether or not her automobile was involved. State's witness Harris, as previously related, conducted laboratory tests from which he concluded that it was, and he so testified. Defendant presented witness Wiggins, an automobile service station operator who, from time to time, serviced the automobile and who, at approximately four months subsequent to the accident, made a physical examination of it. Such examination was made at the request of the defendant and her counsel. The witness testified that in his opinion the distortion of the front bumper, as revealed by a photograph in evidence, would not have been caused by its having collided with the bicycle but rather appeared to have been caused by the use of a bumper jack. It is the defendant's contention that the granting of

the motion would have assisted the jury in determining what weight to give to this witness' testimony and could not have been prejudicial to the State. It is within the sound discretion of the trial court whether or not to permit the jury to view and inspect the place or the property involved in the action. The ruling of the trial court is reversible only for a clear abuse of such discretion. *City of Indianapolis, etc.* v. *Walker et al.* (1960), 132 Ind. App. 283, 168 N. E. 2d 228; *Evansville and Ohio Valley Ry. Co.* v. *Woosley* (1950), 120 Ind. App. 570, 93 N. E. 2d 355; *Holmes* v. *Combs* (1950), 120 Ind. App. 331, 90 N. E. 2d 822; *Spickelmeir* v. *Hartman* (1919), 72 Ind. App. 207, 123 N. E. 232.

Clearly, the court may refuse to allow such a view where it does not appear that the jury would be materially assisted. *Spickelmeir* v. *Hartman, supra.* Further, the court may refuse to allow a view where photographs in evidence adequately present the situation. *Holmes* v. *Combs, supra.*

In view of the foregoing authorities, we find no abuse of discretion in the ruling complained of; and this is particularly true in view of the slight, if any, probative value of the testimony of witness Wiggins.

The fifth point presented by Defendant is the act of the trial court in overruling her pre-trial motion for disclosure of the contents of certain oral statements made by her to the investigating police officers. In her verified motion, she alleged that four law enforcement officers interrogated her, that she does not remember her statements and therefore could not properly inform her attorney but that said statements were purposely, completely and voluminously taken down by said law enforcement officers that she did not remember and could not inform her attorney so that he could properly prepare her defense with respect to said statements. The State filed a response to said motion wherein it answered that it had no facts upon which it could honestly answer

such allegations. An evidentiary hearing was had upon the motion and the matter taken under advisement. No ruling thereon appears in the record, and the defendant asserts that such amounts to an overruling of the motion, with which we agree. Appellant has argued that she was entitled to have the motion sustained under the authority of various recent cases involving discovery in criminal cases, but we do not meet that issue. The State's answer could be regarded as nothing more than a denial and thereby placed the burden upon the defendant upon that issue. There being no bill of exceptions containing the evidence presented upon the issue, we can only conclude that the defendant did not carry such burden. We cannot find error in the findings of the trial court when the evidence upon which they were made is not available to us. *Calvert* v. *State* (1968), 251 Ind. 119, 239 N. E. 2d 697; *Messersmith* v. *State* (1940), 217 Ind. 132, 26 N. E. 2d 908.

Defendant's sixth assignment is that the trial court erred in allowing two of the State's witness to testify, notwithstanding that they had not been named in the State's original pre-trial disclosure. State's witnesses, Gerhart and Lawson, who in retrospect appear to have been material witnesses, were not listed upon the original disclosure of witnesses filed by the State but were listed upon a supplemental disclosure motion filed by the State during the course of the trial. The motion alleged that the names of such witnesses were not known to the State previously, although one subsequently testified that he had been interviewed by a deputy sheriff following the accident. The defendant moved to exclude the testimony of both witnesses and, in the alternative, for a continuance of two weeks. The court denied the motion to exclude but granted a continuance from Friday until the following Monday. When court reconvened, these witnesses were permitted to testify. The defendant renewed her motion to exclude but did not in any way indicate that she had attempted to and been unable to interview the witnesses. There

is nothing to indicate that either witness was in any way elusive and it is obvious that careful trial preparation could have revealed both the witnesses and their materiality. There is nothing to indicate that the continuance did not afford the defendant an ample opportunity to overcome any disadvantage that she may have theretofore been under by reason of the State's failure to include these witnesses upon its first disclosure statement. Defendant refers us to *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536 and she insists that the procedure employed did not insure fairness as required. As we have said many times, although the defendant is entitled to a fair trial, she is not entitled to a perfect one. We fail to see where the trial court failed to compensate properly for the failure of the State, and we think that the defendant merely seeks to take an unrealistic advantage of error that has caused her no harm.

The seventh error alleged by the defendant is that the trial court erred in overruling her motion for mistrial based upon the prosecutor's misconduct in persisting to question the defendant's husband before the jury with respect to a matter that was privileged by reason of the marital relationship. The State called the defendant's husband as its witness and asked him whether or not he had testified before the grand jury to the effect that when he returned home on the date of the collision his wife was under the influence of intoxicants. To this question, the defendant objected upon the grounds that the State was attempting to cross-examine its own witness. The jury was then excused from the court room, at which time the defendant extended her objection to include the grounds that the communication was privileged by reason of the marital relationship. After arguments of counsel, the objection was sustained. The prosecutor then made an offer to prove, that if the witness had answered the question "yes" his answer would refute his prior statement, and if the answer were "no", it would enable the State to impeach his testimony by the introduction of the grand jury

transcript. The jury returned to the court room, and the prosecutor asked the witness whether or not he had appeared before the grand jury on February 25, 1969. The defendant objected to the question and moved for a mistrial for misconduct upon the grounds that the witness was incompetent and that the subject matter was a privileged communication. This objection was overruled, and we think correctly so. The witness was not incompetent by reason of the marital relationship, such relationship only making certain communications between the spouses privileged. *Shepherd* v. *State* (1971), 257 Ind. 229, 277 N. E. 2d 165. Neither was the information sought to be elicited by the question a matter of privilege, as whether or not the witness had appeared before the grand jury would not be information communicated to him by reason of the marital relationship. The jury was again excused and further argument of counsel proceeded, after which the court again overruled the objection and the motion. The witness, still outside the view and hearing of the jury, answered in the affirmative. Still outside the presence of the jury, counsel proceeded with questions and arguments having no bearing upon the merits of the case. The jury was again returned to the court room, and the prosecutor asked the witness "Have you told the court all you know about the death of the boy on the bicycle, that occurred on February 11, 1969?" The defendant again objected and moved for a mistrial. The defendant contends that the conduct of the prosecuting attorney in this line of questioning could only be reasonably interpreted as indicating a desire to imply to the jury that the testimony of the witness before the grand jury, although never allowed by the court to be heard by the jury, was incriminating to the defendant. She contends that the submission of the aforementioned questions before the jury, after the first question had been overruled, constituted prejudicial misconduct on the part of the prosecuting attorney. We agree, that the last question was improper, although not for the reasons proffered by counsel. The

witness was in no way incompetent. We think the question improper and misconduct, in that the defendant was not necessarily required to reveal all that he knew about the case. It is entirely possible that he had information that was protected by the marital privilege. If the witness answered, "no" it could very well implant in the minds of the jurors the idea that he was withholding information that should have been revealed; and the existence of the privilege, if exercised by the defendant, should not be turned to her disadvantage any more than we would permit counsel to comment upon the exercise by a defendant of his privilege to refuse to testify. However, we do not think that such misconduct was so extensive or was apt to have such undue influence upon the jury as to compel a mistrial. We have recently outlined a number of factors to be considered with reference to the declaration of mistrials for misconduct of counsel. *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312. It should be further noted that the witness answered the last question in the affirmative, thus it is difficult to see where the defendant could have been harmed. Trial judges have and must exercise much discretion in such areas as presented by this issue, and we will substitute our judgment for theirs only when the error and prejudice appears clear to us.

Defendant's eighth contention is that the trial court erred in permitting the State's expert witness to testify as to conclusions reached from laboratory analysis of paint samples taken from the defendant's automobile and from the decedent's bicycle. X-ray diffraction films had been made, and the witness drew and testified to certain conclusions therefrom, but the films were not offered as evidence. Defendant maintains that this violated the best evidence rule and deprived her of the opportunity to intelligently cross examine. Clearly the best evidence rule is not involved. The purpose of such rule is to assure that the trier of the facts has submitted to it the evidence upon any issue that will best enable it to arrive at the truth. It is generally applied with

respect to documentary evidence, such as written instruments, and it excludes all testimony of the contents of such instruments when the instrument itself is available and could be examined by the jury. The films in question were merely a link in the process by which the expert interpreted bits of fragmentary evidence into evidence that would be intelligible to the jury. Viewing the films would not have been helpful to one not trained in their interpretation and very likely would have only been confusing to the jury. Defendant cites us to 12 I.L.E. *Evidence,* § 83 and *Bundy* v. *Cunningham* (1886), 107 Ind. 360, 8 N. E. 174, which we believe to be inapplicable. We find no Indiana authority supporting the defendant's application of the best evidence rule to circumstances such as we here have under consideration. Although not the rule of the case, we are drawn to the comments of our Appellate Court on petition for rehearing in the case of *Lafayette Street Railway, Inc.* v. *Ullrich* (1930), 92 Ind. App. 202, 168 N. E. 709, wherein it was said:

> "It appears by the evidence that the radiographs in question were not susceptible of being understood by one not skilled in their interpretation, and, without explanation, would be unintelligible to the jury. Under such conditions, the best evidence was not the plates themselves, but the testimony of one skilled in their interpretation." 92 Ind. App. at 217.

We believe that the following quote accurately distinguishes the situation at bar from those to which the proposition proffered by the defendant would properly apply:

> "The best evidence rule is viewed by some decisions as applicable to photographs or X-rays in the sense that oral proof explanatory thereof is unnecessary to an understanding of the photograph and hence inadmissible. An ordinary photograph is the best evidence of what is shown thereby, and parol evidence is generally inadmissible to prove what is shown by a photograph. Secondary evidence of the contents of an X-ray photograph is also regarded as inadmissible if the X-ray photograph itself is available. But it seems clear that the best evidence rule will not operate to

exclude evidence concerning X-ray photographs which is purely explanatory in character and which is offered by expert witnesses in an effort to explain what might otherwise be unintelligible to the lay mind." 29 Am. Jur. 2d 543, *Evidence* § 485 and cases were cited.

We believe the defendant would have been entitled to examine the films for the purpose of cross examination or to enable her own expert witness to offer his opinion, if different from that of the State's witness. Her action, however, was an attempt to exclude testimony of the State's expert rather than to require the production of the film, and we think the objection as made was properly overruled.

The ninth alleged error assigned by the defendant is the giving of the following instruction tendered by the State:

"I instruct you that, if verbal statements of the defendant have been proved in this case, only take them into consideration with all the other facts and circumstances proved. What the proof may show you, if anything, that the Defendant has said against herself the law presumes to be true, because against herself (sic)."

We agree that this instruction is erroneous as vague and contradictory. In view of the clear evidence of her guilt, aside from her admissions, however, we do not believe that she was prejudiced. Where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise, errors in the giving or refusing of instructions are harmless and will not be considered on appeal. *Mason* v. *State* (1908), 170 Ind. 195, 83 N. E. 613; *Hay* v. *State* (1912), 178 Ind. 478, 98 N. E. 712.

Finally, it is the defendant's contention that her admissions during the police interrogation and the results of laboratory tests made possible from her consent to examine her automobile were inadmissible as having been obtained in violation of the constitutional rights as set forth in *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 and *Escobedo* v. *Illinois* (1964), 378 U. S. 478, 84 S. Ct. 1758, 12

L. Ed. 2d 977. She does not deny that the warning was given nor that it was understood but only that it was not timely given. The only admissions made by the defendant prior to the giving of the required warnings related to her ownership of the automobile and the fact that she had driven it on the day of the fatal accident. These admissions came into evidence through the testimony of Officer Berry, who was the first officer to interrogate her. His testimony discloses that he went to her residence and place of business and proceeds as follows:

"Q. What did you do sir?
A. I walked in the Beauty Parlor part, and the lady appeared.
Q. And what lady was that?
A. That was Mrs. Pinkerton.
Q. And what did you say to her then?
A. I advised her I was Detective Ronald R. Berry of the Elkhart County Police Department, and showed her my identification.
Q. What did you say to her?
A. She asked me to be seated, and I did, and then I asked her if this was her bronze Chevrolet parked out there.
Q. What did she say?
A. She said yes, sir, it was.
Q. And what did you say?
A. I asked her if she drove it Tuesday afternoon.
Q. And what did she say?
A. She said yes, sir, she did, and when I got home my husband wanted to know if I hit that boy.
Q. And then what did you do?
A. I then adivsed (sic) her of her constitutional rights.
Q. Sergeant Berry, when you advised her of her constitutional rights as you have just stated, what did you tell her?
A. I advised her that she had the right to remain silent; that anything you say can and will be used against you in a court of law. You have the right to talk to an attorney, and have him present while being

questioned. If you are poor and can not afford to hire an attorney, one will be appointed for you free of charge before any questions. Then I asked her if she understood each of these rights, and she said she did, and I asked her with these rights in mind, did she want to talk to me, at this time, and she said she did.

Q. Then did you proceed to talk to the lady?

A. Yes, I did." (Tr. p. 314 to p. 316)

We seriously question that at the time of this interrogation the defendant was in custody or that the investigation had focused on the defendant, so as to bring the interrogation within the proscriptions of the *Miranda* and *Escobedo* cases; but regardless, however, we cannot be here called upon to pass upon the question. The defendant's motion for a new trial assigns seventy specific alleged errors, ten of which were preserved and raised on appeal. However, we do not find the admission of the foregoing testimony to be among the errors alleged in the motion. It has long been the law of this state that a matter cannot be raised for the first time on appeal. *Tyler* v. *State* (1968), 250 Ind. 419, 236 N. E. 2d 815; *Chambers* v. *State* (1966), 247 Ind. 445, 215 N. E. 2d 544; *Lowery* v. *State* (1925), 196 Ind. 316, 148 N. E. 197; *King* v. *State* (1921), 191 Ind. 306, 132 N. E. 628. Further, no objection was made at the time such admissions by the defendant were testified to by Officer Berry.

"A party may not sit idly by and permit the court to act in a claimed erroneous matter and then attempt to take advantage of the alleged error at a later time. Objections must be made timely so that they may be promptly corrected by the trial court." *Hensley* v. *State* (1969), 251 Ind. 633, 244 N. E. 2d 225 at 228. *Barnes* v. *State* (1971), 255 Ind. 674, 266 N. E. 2d 617.

As may be seen from the testimony of Officer Berry set out above, a proper warning was given immediately after it was determined that the defendant had driven the car on the afternoon of the fatal accident. Her consent for the police to take her car into custody, as a result of which

the tests were made and the results thereof brought into evidence, came following the giving of the *Miranda* warning. It is further revealed by the record, that following this warning and prior to the time the consent to take the vehicle was obtained, Sergeant Bowman appeared and took charge of the interrogation. Upon his appearance, immediately after the introductions were made, he asked Officer Berry if the defendant's constitutional rights had been given to her. Officer Berry advised that they had been, and the defendant nodded in a fashion indicating that she understood them. This claimed error, by the defendant, challenges only the timeliness of the warning, and from the foregoing, as respects this particular evidence, it is clear that the warning was timely given.

The judgment of the trial court is affirmed.

Arterburn, C. J. and Givan and Hunter, JJ., concur; De-Bruler, J., concurs in result.

NOTE.—Reported in 283 N. E. 2d 376.