**Michael S. DILL, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 53S01–0008–CR–504.**

Supreme Court of Indiana.

Feb. 7, 2001.

two appeals to consider the pending petitions to transfer.

Michael J. Spencer, Deputy Public Defender, Bloomington, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## ON PETITION TO TRANSFER

DICKSON, Justice

The defendant, Michael S. Dill, was convicted of burglary [1] and conversion.[2] He was acquitted of two counts of theft. The Court of Appeals affirmed. *Dill v. State*, 727 N.E.2d 22 (Ind.Ct.App.2000). We granted transfer to address the defendant's claim that the trial court erred in instructing the jury that it could consider the flight of a person after the commission of a crime. The Court of Appeals observed that Indiana jurisprudence remains unclear about the use of such instructions. *Id.* at 25.

In this appeal, the defendant argues, in part, that flight instructions are inherently improper. The State urges that the instruction correctly states the law, noting several recent cases in which this Court has failed to find error in the giving of a flight instruction.

In *Bellmore v. State*, 602 N.E.2d 111 (Ind.1992), we confronted an instruction that informed the jury that flight and other actions calculated to hide a crime, though not proof of guilt, are evidence of consciousness of guilt and are circumstances which may be considered by you along with other evidence. *Id.* at 119. Responding to the issues presented, we found that the instruction could not " 'reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense.' " *Id.* (quoting *Francis v. Franklin*, 471 U.S. 307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344, 354 (1985)). Although we concluded that the specific language of the instruction, particularly in the context of the other instructions, did not constitute infringement of the defendant's right to due process of law, we nevertheless recommended against the future use of this instruction, but did not articulate our reasons or otherwise provide explicit guidance. Since *Bellmore*, we have repeatedly noted this recommendation but have not actually applied it to find error. *See Bufkin v. State*, 700 N.E.2d 1147, 1151 (Ind. 1998) (deciding the issue on the basis of the defendant's trial objection, which was not based on *Bellmore*, but rather asserted only that the evidence did not support the instruction); *Fleenor v. State*, 622 N.E.2d 140, 147 (Ind.1993)(declining to find error in the giving of a flight instruction at trial that occurred in 1983, before our opinion in *Bellmore*, but noting "this Court has more recently recommended against the use of such instructions"); *Walker v. State*, 607 N.E.2d 391, 394 (Ind.1993)(holding a flight instruction giv-

---

1. Ind.Code § 35–43–2–1.

2. Ind.Code § 35–43–4–3.

en in a 1991 trial was a correct statement of law, but noting that, in *Bellmore,* "this Court has recommended against future use of the flight instruction."); *see also McCord v. State,* 622 N.E.2d 504, 512–13 (Ind.1993)(finding no error in the use of a flight instruction in 1991 trial, with no reference to *Bellmore*).

■ In the present case, the trial judge acknowledged the *Bellmore* directive but, noting the subsequent *Bufkin* opinion that permitted a flight instruction, he proceeded to give the flight instruction used in *Bellmore.* The defendant timely objected on several grounds, including that we had recommended against its use, that the instruction focused excessive attention on evidence of flight, and that it was confusing. Record at 568–69. Implementing our directive in *Bellmore,* we now hold that the trial court erred in giving the flight instruction. The instruction is confusing, it unnecessarily emphasizes certain evidence, and it has great potential to mislead the jury.

■ This instruction is inherently contradictory because it simultaneously informs the jury that a person's flight after the commission of a crime is "not proof of guilt" but yet is "evidence of consciousness of guilt" and "may be considered." The purpose of a jury instruction "is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Chandler v. State,* 581 N.E.2d 1233, 1236 (Ind.1991); *Foster v. State,* 262 Ind. 567, 573–74, 320 N.E.2d 745, 748 (Ind.1974). An instruction that tends to confuse the jury is properly rejected. *Barnard v.*

*Himes,* 719 N.E.2d 862, 868 (Ind.Ct.App. 1999); *Miller v. Ryan,* 706 N.E.2d 244, 249 (Ind.Ct.App.1999). The trial court should refuse ambiguous and confusing instructions. *Deckard v. Adams,* 246 Ind. 123, 128, 203 N.E.2d 303, 306 (Ind.1965). This flight instruction is confusing.[3]

■ Flight and related conduct may be considered by a jury in determining a defendant's guilt. *Johnson v. State,* 258 Ind. 683, 686, 284 N.E.2d 517, 519 (Ind. 1972). However, although evidence of flight may, under appropriate circumstances, be relevant, admissible, and a proper subject for counsel's closing argument, it does not follow that a trial court should give a discrete instruction highlighting such evidence. To the contrary, instructions that unnecessarily emphasize one particular evidentiary fact, witness, or phase of the case have long been disapproved. *Perry v. State,* 541 N.E.2d 913, 917 (Ind.1989); *Patrick v. State,* 516 N.E.2d 63, 65 (Ind.1987); *Coleman v. State,* 465 N.E.2d 1130, 1133 (Ind.1984); *Fehlman v. State,* 199 Ind. 746, 755, 161 N.E. 8, 11 (Ind.1928); *Danville Trust Co. v. Barnett,* 184 Ind. 696, 700, 111 N.E. 429, 431 (1916). We find no reasonable grounds in this case to justify focusing the jury's attention on the evidence of flight.[4]

We further find error in the giving of the flight instruction because of its significant potential to mislead. In *Fisher v. State,* 259 Ind. 633, 647, 291 N.E.2d 76, 83 (Ind.1973), this Court declined to find error in the trial court's refusal to give the defendant's requested instruction informing the jury that it could consider the defendant's failure to flee as of the time of arrest. We stated, "The fact that a defen-

---

3. Although not addressing the issue of confusion, prior cases have rejected claims that a flight instruction invaded the province of the jury "when it tells the jurors that flight of the accused is a circumstance which may be considered, and from which they may draw an inference of guilt in connection with the other evidence presented." *Phillips v. State,* 550 N.E.2d 1290, 1301 (Ind.1990); *Taylor v. State,* 495 N.E.2d 710, 713 (Ind.1986).

4. We overrule *Agnew v. State,* 518 N.E.2d 477, 478 (Ind.1988), which, based only on the assertion that it was a "standard instruction" and "entirely proper," rejected a claim that a flight instruction unduly highlighted a single aspect of the evidence.

dant flees or does not flee does not indicate either guilt or innocence of itself and instructions calling attention to this situation may only serve to highlight an otherwise ambiguous occurrence." *Id.* at 647, 291 N.E.2d at 83. Over one hundred years ago the United States Supreme Court, reversing a murder conviction because the court's flight instruction was misleading, observed:

> [I]t is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that "the wicked flee when no man pursueth; but the righteous are bold as a lion." Innocent men sometimes hesitate to confront a jury,—not necessarily because they fear that the jury will not protect them, but because they do not wish their names to appear in connection with criminal acts, are humiliated at being obliged to incur the popular odium of an arrest and trial, or because they do not wish to be put to the annoyance or expense of defending themselves.

*Alberty v. United States,* 162 U.S. 499, 511, 16 S.Ct. 864, 868, 40 L.Ed. 1051, 1056 (1896). Earlier that term in *Hickory v. United States,* 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474, (1896), the Court also found error in the giving of a flight instruction, finding that it was misleading because it presented the inculpatory inferences but "omitted or obscured the converse aspect." *Id.* at 423, 16 S.Ct. at 333, 40 L.Ed. at 479.

Because this flight instruction is confusing, unduly emphasizes specific evidence, and is misleading, we hold, in accordance with our directive in *Bellmore,* that it was error to give the instruction.

█ Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Crawford v. State,* 550 N.E.2d 759, 762 (Ind.1990); *Stout v. State,* 479

N.E.2d 563, 565 (Ind.1985); *Battle v. State,* 275 Ind. 70, 77, 415 N.E.2d 39, 43 (Ind. 1981); *Grey v. State,* 273 Ind. 439, 448, 404 N.E.2d 1348, 1353 (Ind.1980); *Pinkerton v. State,* 258 Ind. 610, 622, 283 N.E.2d 376, 383 (Ind.1972). An instruction error will result in reversal when the reviewing court "cannot say with complete confidence" that a reasonable jury would have rendered a guilty verdict had the instruction not been given. *White v. State,* 675 N.E.2d 345, 349 (Ind.Ct.App.1996).

█ The defendant did not testify, and the following evidence is without substantial dispute. Sometime between the close of business on Wednesday, October 15, 1997, and 7:45 on Thursday, October 16, 1997, the office of Personnel Management ("PM") in Bloomington was burglarized. A blank company check was discovered to have been taken from the office. At the time of the burglary, one of PM's employees, Birchfield, was engaged to marry the defendant. On Wednesday evening, the defendant had requested keys from Birchfield's key chain, and they argued about it. The defendant had access to Birchfield's keys. The defendant did not return to their home that night. At approximately 3:00 a.m. Thursday morning, however, the defendant went to the home of a neighbor, Ambrose Craig. The defendant appeared upset and requested a loan of $500, claiming that he needed to deliver the money to unnamed persons at a local convenience store within twenty minutes "or they're going to kill me." Record at 501. Craig gave him a check for $500. Three or four minutes after the defendant left, Craig went to the convenience store but did not find the defendant and observed no vehicles present.

Birchfield arrived at work Thursday morning to discover that her keys to the office and her home were missing from her key ring. Shortly thereafter, her supervisor arrived and opened the door with his key. The supervisor testified that the lock was not fully engaged when he unlocked it.

The burglary was not discovered, however, until another employee arrived and noticed that things were out of place at her desk. Upon checking to see if anything was missing, she noticed a blank check had been torn from the company checkbook. Birchfield's missing office key was found on her planner, which was on her desk. There was no sign of forced entry. The police detective supported the testimony of the supervisor that the lock on the door to the office had been in a position consistent with someone attempting to· engage the deadbolt lock from the outside without a key. The defendant called Birchfield at her office on Thursday, and they spoke again by telephone that evening. He indicated that he was in Murfreesboro, Tennessee, and requested money to return home. During the call, Birchfield accused the defendant of breaking into the PM office, which he initially denied. Later in the conversation, the defendant admitted to being in the building, but only to remove a page from Birchfield's planner. Birchfield confirmed that she found a page missing. In a subsequent telephone conversation with Birchfield, the defendant admitted to taking the company check and stated that he threw it into a dumpster behind the office. The defendant had some familiarity with the PM office because he had applied for work there and had visited for an interview. Birchfield and the defendant had a tumultuous relationship, but Birchfield continued to help the defendant even after the burglary by giving him money to return to Bloomington and meeting him in mid-November so that he could retrieve his personal effects.

From this evidence, we conclude that a reasonable jury could not properly have acquitted the defendant and would have rendered a guilty verdict even if the erroneous flight instruction had not been given. The instruction error does not require reversal.

We affirm the defendant's convictions and as to all other issues, the Court of Appeals is summarily affirmed. Ind. Appellate Rule 11(B)(3).

SULLIVAN, BOEHM, and RUCKER, JJ., concur. SHEPARD, C.J., dissents with separate opinion.

SHEPARD, Chief Justice, dissenting.

This Court observes repeatedly that a trial judge should give instructions relevant to the issues raised by the parties, and our state's trial practice features scores of instructions about particular aspects of various causes of action, given regularly by trial judges and regularly approved on appeal.

Against this relatively liberal backdrop, I find little justification for putting flight instructions on the extremely short list of those which are completely prohibited.

A reasonably comprehensive survey reveals that hardly any other state supreme courts share my colleagues' anxiety about such instructions. *See, e.g., Ex parte Clark,* 728 So.2d 1126 (Ala.1998) (flight instruction proper); *State v. Thornton,* 187 Ariz. 325, 929 P.2d 676 (1996) (same); *State v. Cox,* 251 Conn. 54, 738 A.2d 652 (1999) (evidence adequate to warrant flight instruction); *Tavares v. State,* 725 So.2d 803, 806 (Miss.1998) ("this Court held that a flight instruction was appropriate in cases where the flight was unexplained and in cases where the flight has considerable probative value"); *Walker v. State,* 113 Nev. 853, 944 P.2d 762 (1997) (flight instruction does not create presumption of guilt); *State v. Warren,* 348 N.C. 80, 499 S.E.2d 431 (1998) (flight instruction does not violate constitutional rights); *State v. Taylor,* 78 Ohio St.3d 15, 676 N.E.2d 82 (1997) (instruction on flight neither arbitrary nor unreasonable); *Commonwealth v. Rios,* 554 Pa. 419, 721 A.2d 1049 (1998) (complaint about flight instruction held meritless); *State v. Correia,* 707 A.2d 1245 (R.I.1998) (flight instructions warranted if evidence about flight suggests consciousness of guilt as to charged crime); *State v. Nesbit,* 978 S.W.2d 872 (Tenn.1998) (in-

struction that flight was question of fact for jury and flight alone not proof of guilt held proper); *Clagett v. Commonwealth,* 252 Va. 79, 472 S.E.2d 263 (1996) (flight instruction approved); *Germany v. State,* 999 P.2d 63 (Wyo.2000) (flight instruction proper even where identity of perpetrator is a central issue).

The Montana Supreme Court does share the view taken today by our Court. *State v. Davis,* 5 P.3d 547, 553 (Mont.2000) (flight instruction "may be an unnecessary comment on the evidence" and "should no longer be given").

Moreover, while the U.S. Supreme Court found error in certain flight instructions late in the nineteenth century,[1] modern federal authority overwhelmingly upholds properly worded flight instructions supported by sufficient factual predicates. *See, e.g., United States v. Johnson,* 199 F.3d 123 (3rd Cir.1999) (evidence warranted flight instruction); *United States v. Martinez,* 190 F.3d 673 (5th Cir.1999) (flight instruction is proper when evidence supports certain inferences;[2] harmless error applies); *United States v. Clark,* 45 F.3d 1247, 1250 (8th Cir.1995) ("we have squarely held that these instructions may be given when warranted by the evidence"); *United States v. Martinez,* 83 F.3d 371 (11th Cir.1996) (flight instruction proper).

The Seventh Circuit shares the majority's concern that an instruction may unduly emphasize flight, and it has discouraged the use of such instructions, as we did in *Bellmore. United States v. Williams,* 33 F.3d 876 (7th Cir.1994); *Bellmore v. State,* 602 N.E.2d 111 (Ind.1992). It has not banned such instructions entirely. *See United States v. Rodriguez,* 53 F.3d 1439, 1451 (7th Cir.1995) ("we ... reassert our

position that flight instructions should be given with caution, if at all.")

I think the republic will still stand even without the flight instructions sometimes tendered by the State, but I would not be surprised to see defense counsel now begin to tender their own instructions on flight as a way to safeguard their clients against the possibility that the prosecutor might oversell the matter during final argument. Sorting out the equities of that should prove challenging.

All in all, I would prefer to leave us where we were in *Bellmore.*

---

**1.** *Alberty v. United States,* 162 U.S. 499, 16 S.Ct. 864, 40 L.Ed. 1051 (1896); *Hickory v. United States,* 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474 (1896)

**2.** Referring to a typical formulation requiring evidence that "1) the defendant's conduct

constituted flight; 2) the defendant's flight was the result of consciousness of guilt; 3)the defendant's guilt related to the crime with which he was charged; and, 4) the defendant felt guilty about the crime charged because he, in fact, committed the crime." *Id.* at 678.