**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**





ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALFRED VELA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1210-CR-559 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Clarence D. Murray, Judge
Cause No. 45G02-1101-MR-1

**July 3, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Alfred Vela appeals his conviction for voluntary manslaughter, as a Class A felony, following a jury trial.[1] Vela raises a single issue for our review, namely, whether the trial court's instruction to the jury on voluntary manslaughter was supported by the evidence. We affirm.

**FACTS AND PROCEDURAL HISTORY**

In January 2011, Sheena Tomlinson and Joseph Burton had been in a relationship for about seven years, and they had two daughters together. However, over the last two years of that relationship, Tomlinson had also had an intimate relationship with Vela. Vela took Tomlinson out, bought her gifts, and gave her money. For about five months, Tomlinson lived with Vela while there was a warrant out for her arrest. Tomlinson told Vela that she loved him, and, although Vela and Burton knew about each other, "[t]hey didn't get along." Transcript at 324.

On January 13, 2011, Tomlinson asked to borrow $2,000 from Vela for bail. As a condition to giving her that money, Vela told Tomlinson to "stay away from your child[ren]'s father" and away from "Hammond period." Id. at 367. Vela then bailed Tomlinson out of jail, and they spent the day together. However, at the end of the day Tomlinson "br[oke] things off with [Vela] . . . [b]ecause [she] wanted to go home to [Burton]." Id. at 331. Tomlinson told Vela: "I'm sorry, but I thought I could do this, and I can't. I want to go home with Joseph. I love Joseph." Id. Vela "was upset." Id.

---

[1] Vela does not appeal his conviction for failure to stop and remain at the scene of an accident resulting in injury or death, as a Class C felony. We also note that Vela's brief on appeal does not include a copy of the appealed judgment or order, contrary to Indiana Appellate Rule 46(A)(10).

2

Three days later, on January 16, Tomlinson and Burton were walking hand-in-hand down Michigan Street in Hammond. Because of recent snowfall, they were walking on the street rather than the sidewalk. Vela, who was driving a gray Pontiac, observed Tomlinson and Burton together. He then accelerated his vehicle, hit Tomlinson and Burton, and drove away. Tomlinson was knocked back, but Burton later died from his injuries.

After officers arrived at the scene, Tomlinson informed them that Vela may have been the driver. Officers located Vela and the gray Pontiac, which had obvious front-side damage. Using the vehicle's "airbag control module," id. at 222, police technicians were able to determine that, in the five seconds immediately preceding the accident, Vela had accelerated from thirty-four to thirty-seven miles per hour and that Vela did not activate his brakes until one second before the accident.

On January 18, the State charged Vela with murder, involuntary manslaughter, reckless homicide, and failure to stop and remain at the scene of an accident resulting in injury or death. At the end of Vela's jury trial, the court instructed the jury, over Vela's and the State's objections, on voluntary manslaughter, as a lesser-included offense of murder. The jury found Vela guilty of voluntary manslaughter, involuntary manslaughter, reckless homicide, and failure to stop. The court entered its judgment of conviction on voluntary manslaughter, as a Class A felony, and failure to stop, as a Class C felony, and sentenced Vela accordingly. This appeal ensued.

**DISCUSSION AND DECISION**

Vela challenges the trial court's jury instruction on voluntary manslaughter. As we have discussed:

> "The purpose of a jury instruction 'is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001) (quoting Chandler v. State, 581 N.E.2d 1233, 1236 (Ind. 1991)). Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse of discretion. Schmidt v. State, 816 N.E.2d 925, 930 (Ind. Ct. App. 2004), trans. denied. Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. Id. The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury. Id. at 930-31. Still, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. Id. at 933 (citing Dill, 741 N.E.2d at 1233).

Williams v. State, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008). Further:

> In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court.

Simpson v. State, 915 N.E.2d 511, 519 (Ind. Ct. App. 2009) (quotation omitted), trans. denied.

Here, Vela asserts that there was no evidence in the record to support the instruction on voluntary manslaughter. Specifically, Vela asserts that there was no evidence that he acted in "sudden heat." Appellant's Br. at 8. Voluntary manslaughter is an inherently lesser included offense of murder. Washington v. State, 808 N.E.2d 617, 625 (Ind. 2004). The only element distinguishing murder from voluntary manslaughter is "sudden heat," which is an evidentiary predicate that allows mitigation of a murder

4

charge to voluntary manslaughter. Id. "Sudden heat" is characterized as anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection. Id. at 625-26. An instruction on voluntary manslaughter is supported if there exists evidence of sufficient provocation to induce passion that renders a reasonable person incapable of cool reflection. Id. at 626. Any appreciable evidence of sudden heat justifies an instruction on voluntary manslaughter. Id.

> Vela's argument that there was no evidence of sudden heat is as follows:

> While Vela may not have liked Tomlinson being with Burton, the situation was not new or a surprise. . . .
>     Tomlinson's words asking Vela to return her to Burton's home and seeing Tomlinson and Burton together were the only possible impetus for the attack. The words alone are not sufficiently provocative to merit a conviction for voluntary manslaughter instead of murder. Vela may have been angered by Tomlinson telling him she wanted to go back to Burton even after he had bailed her out of jail. However, there was ample time for cool reflection before his actions. Three days passed between the statement and the evening that Vela hit Burton with his vehicle.

Appellant's Br. at 10-11. We cannot agree.

The trial court did not abuse its discretion when it instructed the jury on voluntary manslaughter. While, for obviously different reasons, neither the State nor Vela requested the instruction,[2] the instruction was supported by evidence in the record. Namely, it was for the jury to decide whether Vela's observation of Tomlinson and Burton walking hand-in-hand down the street on January 16 "brought all of [Vela's] disappointment and anger to the surface and . . . obscured his reason." See Appellee's

---

[2] Although both the State and Vela objected to the instruction, it is beyond dispute that, "[i]f it would be possible for a jury to find that the lesser, but not the greater, offense had been committed, then the trial court must instruct the jury on both offenses." Watts v. State, 885 N.E.2d 1228, 1232 (Ind. 2008) (emphasis added).

Br. at 12. Vela's argument that Tomlinson's relationship with Burton was "not new" to Vela or that Vela had three days to cool off after Tomlinson ended the relationship seeks to have this court view the evidence in a manner that is not the most favorable to the trial court's judgment, which we will not do.

Because there was evidence in the record to support giving the instruction on voluntary manslaughter, the trial court did not abuse its discretion when it instructed the jury on that lesser-included offense. And because Vela has not shown that the court's instruction was not supported by the evidence, we need not consider his additional argument that the purportedly erroneous instruction prejudiced him. We affirm Vela's conviction.

Affirmed.

BAILEY, J., and BARNES, J., concur.