**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOHN (JACK) F. CRAWFORD**
Crawford & Devane
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTONIO HUGHLEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1301-CR-40 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-1108-FA-54867

**October 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Anotonio Hughley appeals his convictions for dealing in cocaine, as a Class A felony, and dealing in marijuana, as a Class D felony, following a jury trial. Hughley presents three issues for review:

1.   Whether the trial court erred when it refused to give the jury a reasonable theory of innocence instruction.

2.   Whether the trial court erred when it refused Hughley's request for a hearing under Franks v. Delaware, 438 U.S. 154 (1978), regarding the validity of the search warrant.

3.   Whether the State committed a discovery violation warranting a new trial.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

On the evening of August 2, 2011, Officer John Schweers and other officers with the Indianapolis Metropolitan Police Department ("IMPD") were looking for the driver of a white Impala who had fled on foot after his car crashed at the corner of 30th Street and Euclid Avenue following a high speed chase. Officers lost track of the driver after he fled his car, but a "concerned citizen" reported that the suspect was in the area of 30th and Gladstone Avenue "near a yard with a red car with fancy wheels." Appellant's App. at 21. Officers on the scene found a red Buick LeSabre with chrome wheels parked in front of the house at 3058 Gladstone Avenue. A police dog had also tracked the driver's scent to that area.

Officer Schweers and Lieutenant Thomas Black knocked on the front door of the house, and Hughley opened the door. The officers explained that they were looking for a

2

driver who had fled after a high-speed chase. Hughley told the officers that he lived there with his girlfriend and that the driver was not there. Looking past Hughley into the living room, the officers saw three men sitting on a couch. After determining that none of the men in the house matched the description of the Impala's driver, Officer Schweers asked to look through the house to make sure the man they were searching for was not inside. Hughley consented. The officers then asked Hughley and the other three men to stand on the front porch in order to "secure" the house and proceeded to look through the house for the driver. Id. at 60.

While inside the house, Officer Schweers saw in plain view on the kitchen table a Smith and Wesson revolver, later identified as a .38 Special, along with a "powder substance that based on his training and experience he believed to be cocaine[.]" Exh. 12 at 8. And "[i]n the downstairs bedroom L[ieutenant] Black observed in plain view a bag of what he believed to be based on his training and experience marijuana." Id. Officers secured the scene and contacted a narcotics unit, and Detective Joshua Harpe executed a probable cause affidavit in support of a search warrant.

Upon execution of the search warrant officers discovered cocaine and scales in the refrigerator and marijuana, firearms, and baggies elsewhere in the house. In his pocket Hughley had a key to the home and nearly $4000 in cash. And the officers found mail addressed to Hughley at 3058 Gladstone Avenue.

On August 5, the State charged Hughley with six counts: possession with intent to deliver cocaine in excess of three grams, as a Class A felony; possession of cocaine, as a Class A felony; possession of cocaine and a firearm, as a Class C felony; unlawful

3

possession of a firearm by a serious violent felon, a Class B felony; dealing in marijuana, as a Class D felony; and possession of marijuana, as a Class D felony. On December 28, Hughley filed a motion to suppress and a request for a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Specifically, Hughley requested a hearing to determine whether the search warrant was based on probable cause shown by perjury or with reckless disregard for the truth of the statements in the supporting affidavit. The trial court held a hearing on the motion to suppress on January 19, 2012, and later denied the same, but the court denied the motion for a Franks hearing. The trial court also denied Hughley's motion to certify those orders for interlocutory appeal.

A jury trial was held September 25 and 26, 2012. At the start of trial, the State dismissed the count charging possession of cocaine, as a Class A felony. The jury returned guilty verdicts on all remaining counts, and the trial court entered conviction on the charges of dealing in cocaine, as a Class A felony, and dealing in marijuana, as a Class D felony. The trial court sentenced Hughley accordingly. Hughley now appeals his convictions.

**DISCUSSION AND DECISION**

**Issue One: Jury Instructions**

Hughley first contends that the trial court abused its discretion when it denied his proffered jury instructions. As we have discussed,

> "[t]he purpose of a jury instruction 'is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" Dill v. State, 741 N.E.2d 1230, 1232 (Ind. 2001) (quoting Chandler v. State, 581 N.E.2d 1233, 1236 (Ind. 1991)). Instruction of the jury is left to the sound judgment of the trial court and will not be disturbed absent an abuse

4

of discretion. Schmidt v. State, 816 N.E.2d 925, 930 (Ind. Ct. App. 2004), trans. denied. Jury instructions are not to be considered in isolation, but as a whole and in reference to each other. Id. The instructions must be a complete, accurate statement of the law which will not confuse or mislead the jury. Id. at 930-31. Still, errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. Id. at 933 (citing Dill, 741 N.E.2d at 1233).

Williams v. State, 891 N.E.2d 621, 630 (Ind. Ct. App. 2008). Further:

In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction is a correct statement of the law; (2) whether there was evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court.

Simpson v. State, 915 N.E.2d 511, 519 (Ind. Ct. App. 2009) (quotation omitted), trans. denied.

Hughley contends that the trial court abused its discretion when it refused his proffered jury instructions on the reasonable theory of innocence. Such an instruction informs the jury that "proof by circumstantial evidence must be so conclusive and sure as to exclude every reasonable theory of innocence." Hampton v. State, 961 N.E.2d 480, 482 (Ind. 2012). A jury instruction on the "reasonable theory of innocence" is "appropriate only where the trial court finds that the evidence showing that the conduct of the defendant constituting the commission of a charged offense, the actus reus,[1] is proven exclusively by circumstantial evidence." Id. at 490. Where such is the case, "the jury should be instructed as follows: In determining whether the guilt of the accused is

---

[1] "The Latin phrase 'actus reus' refers to the 'wrongful deed that comprises the physical components of a crime and that generally must be coupled with the mens rea [the criminal state of mind], to establish criminal liability." Hampton, 961 N.E.2d at 488 n.5 (quoting Black's Law Dictionary 41-42 (9th ed. 2009)).

5

proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence." Id. at 481.

The issue presented on appeal is whether the evidence supports giving the reasonable theory of innocence instruction. Hughley contends that he was entitled to the instruction because the State offered circumstantial evidence to prove possession with intent to deal cocaine and possession with intent to deal marijuana. He points out that he had never "admit[ted] possessing the cocaine in the refrigerator, no one saw him place it in the refrigerator, and no fingerprints or DNA associated [him] with the bags of cocaine and marijuana." Appellant's Brief at 7. In essence, his argument is that the State did not prove the elements of the offenses with direct evidence because his possession of the contraband was merely constructive. We cannot agree.

To prove constructive possession of the cocaine and marijuana, the State was required to show that Hughley had both: (1) the intent to maintain dominion and control over them; and (2) the capability to maintain dominion and control over them. See Hundley v. State, 951 N.E.2d 575, 579 (Ind. Ct. App. 2011), trans. denied. Control in this sense concerns the defendant's relation to the place where the substance is found: whether the defendant has the power, by way of legal authority or in a practical sense, to control the place where, or the item in which, the substance is found. Id.

"Direct evidence is '[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption.'" Hampton, 961 N.E.2d at 489 (quoting Black's Law Dictionary 636 (9th ed. 2009)). "Conversely, circumstantial evidence is '[e]vidence based on inference and not on personal knowledge or

6

observation.'" Id. Here, the State proved Hughley's capability to maintain dominion and control by direct evidence, namely: Hughley was in the home when the police arrived, he told police that he lived in the house, he had a key to the house on his person, and the officers found in the house mail addressed to Hughley at that address. Thus, the State did not rely strictly on circumstantial evidence to prove control. Hughley concedes as much in his brief when he states that the case against him was "almost entirely circumstantial." Appellant's Brief at 7. Because direct evidence was admitted at trial to prove the actus reus of both offenses, possession, the trial court did not abuse its discretion when it denied Hughley's request to instruct the jury on the reasonable theory of innocence. See Hampton, 961 N.E.2d at 490.

### Issue Two:  Franks v. Delaware Hearing

Hughley next contends that the trial court erred when it denied him an evidentiary hearing under Franks v. Delaware on his motion to suppress. In particular, Hughley challenged the veracity of the probable cause affidavit used to obtain the search warrant of his home. The relevant section of Franks provides:

> Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request . . . .

438 U.S. at 155-56.

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant

affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue. (Footnote omitted).

Id. at 171-72.

Here, Detective Harpe prepared the probable cause affidavit in support of the request for the search warrant based on information reported to him by Officer Schweers and Lieutenant Black:

Inside [the home at 3058 Gladstone], Officer Schweers saw in plain view on the kitchen table a Smith and Wesson revolver along with a powder [sic] substance that based on his training and experience he believed to be cocaine. In the downstairs bedroom Lt[.] Black observed in plain view a bag of what he believed to be based on his training and experience marijuana. Officers then secured the scene and contacted [the] East District Narcotics Unit.

Exhibit 12 at 8. When officers executed the search warrant, they did not recover any cocaine from the kitchen table or any marijuana from the downstairs bedroom. Based on that fact, Hughley contends that Detective Harpe's affidavit was executed with a false statement made knowingly and intentionally or with reckless disregard for the truth.

But Officer Schweers testified at trial that in the kitchen he had seen a handgun and a "white powdery substance piled—spread along the table that [he] immediately believed to be cocaine." Transcript at 227. Regardless of whether any cocaine was

8

recovered from the kitchen table, that information, without more, was sufficient to support the issuance of the search warrant. Thus, even if we do not consider the allegation of marijuana in the downstairs bedroom, the affidavit set out sufficient probable cause to support the issuance of the search warrant based solely upon Officer Schweers' report that he had observed in plain view what he believed in his training and experience to be cocaine. Franks, 438 U.S. at 171-72. As such, Hughley has not shown that the trial court erred when it denied him an evidentiary hearing under Franks.

**Issue Three:  Discovery Violation**

Finally, Hughley contends that the State committed a discovery violation when it led him to believe that DNA evidence had been submitted for testing when, in fact, it had not. In support, he refers generally to the "rules of fair discovery," Appellant's Brief at 21, and asserts that it was "incumbent upon the State prosecutor to tell defense counsel that he had decided not to test the DNA samples," id. at 22. Hughley cites no order from the trial court setting out relevant discovery orders that may have been violated. However, he cites Beauchamp v. State, 788 N.E.2d 881 (Ind. Ct. App. 2003). Thus, we consider the facts of that case.

In Beauchamp, the State failed to call as a witness on direct examination a medical expert who had been identified to Beauchamp in discovery. Indeed, Beauchamp had taken the expert's deposition, and the expert had testified that he had no opinion on the cause of the victim's injuries. But at trial, the State produced that expert as a rebuttal witness, testifying that Beauchamp's version of events could not have caused the victim's injuries. The court held that the State had been aware of the expert's change in opinion,

as evidenced by the State's readiness to offer his testimony in rebuttal, but had not complied with the trial court's standing discovery order and the "requirement under T[rial] R[ule] 26(E)(1) that the parties supplement the substance of their expert's testimony in a timely fashion." Id. at 894. The court held that the prejudice to Beauchamp resulting from such "rope-a-doping"[2] warranted a new trial. Id.

But Beauchamp in inapposite. Here, Hughley has not shown that the State committed a discovery violation by failing to test the DNA evidence. The State filed in December 2011 a notice of its intention to consume the DNA evidence in testing.[3] The State did not share discovery of any DNA evidence before trial, which put Hughley on notice that no such evidence would be offered at trial. At no time did Hughley request the results of DNA evidence in discovery, nor did he object to the consumption of the DNA evidence. And the State had no obligation to test the DNA or put on any particular evidence except as necessary to prove the charges beyond a reasonable doubt. Hughley has not shown that the State committed a discovery violation when it did not test the DNA evidence. We affirm Hughley's convictions.

Affirmed.

MATHIAS, J., and BROWN, J., concur.

---

[2] "Rope-a-doping," a term commonly used in the sport of boxing, refers to an instance in which "one fighter pretends to be trapped against the ropes while his opponent wears himself out throwing punches." Beauchamp, 788 N.E.2d at 894.

[3] Contrary to the State's assertion in its appellee's brief, the filing of a notice that the DNA evidence would be consumed in testing was not tantamount to notice that the defense "knew in advance that there would be no DNA swabs tested." Appellee's Brief at 19. The notice could just as easily be read to indicate that the DNA testing planned would consume all of the DNA evidence.

10