**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEVEN E. RIPSTRA**
**MELISSA J. HALEY**
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSE A. BONILLA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 19A01-1303-CR-146 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DUBOIS CIRCUIT COURT
The Honorable William E. Weikert, Judge
Cause No. 19C01-1009-FC-196

**October 30, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**GARRARD, Senior Judge**

Jose Bonilla appeals his conviction for molesting his girlfriend's young daughter. We affirm.

Bonilla and Amy Crowe moved in together shortly after Crowe's daughter T.C. was born in January 2005.[1] From August 2007 to April 2010, they lived on North Washington Street in Huntingburg in Dubois County. During this time, Crowe often left T.C. alone with Bonilla while she and her younger daughter ran errands.[2] T.C. would frequently lie on the living room couch and watch television on such occasions. Bonilla would then go over to her and put his hard penis in the crack of her bottom. These actions "hurt" and made her bottom feel "[n]asty." Tr. p. 29. Bonilla repeated these acts against T.C. over fifty times while they lived on North Washington Street. One night, Bonilla perpetrated this act on T.C. while she was in her bed and her younger sister was asleep in the same room. Other than that incident, the abuse always occurred when they were alone. Bonilla, whom T.C. called "[D]addy," *id.* at 86, called her a "whore" more than once, *id.* at 37. T.C. was scared to tell anybody about the abuse. T.C. was just five years old when Bonilla finally moved out of the home in April 2010.

In August 2010, T.C. was at Crowe's friend Nichole Cordova's house playing with Cordova's nephew. T.C. told Cordova's nephew that Bonilla had touched her inappropriately. When Cordova told Crowe about the disclosure, Crowe took T.C. to talk with Crowe's mother. T.C. told her grandmother everything. Crowe immediately took

---

[1] T.C. is not Bonilla's child.

[2] Bonilla and Crowe broke up several times during their relationship. Crowe's younger daughter is not Bonilla's child.

T.C. to the police department and filed a report, and on September 10, 2010, T.C. completed a forensic interview.

Sometime after T.C. disclosed the abuse, Bonilla knocked on Crowe's door to get some of his belongings. When Crowe was uncooperative, Bonilla asked if he was in trouble. Crowe told him to get a lawyer and slammed the door.

Bonilla had a job with a landscaping and lawn service. In the middle of September 2010, he left his job without notice. He did not leave a forwarding address or contact his employer about getting his last paycheck.

After T.C.'s interview, the police looked for Bonilla throughout Huntingburg but were unable to locate him. Believing he had fled the area, the police prepared paperwork for a warrant, and the State charged him with Class C felony child molesting.

Bonilla was picked up in Texas and returned to Indiana in February 2012. At his jury trial, T.C., who was then eight years old, and others testified for the State. Bonilla testified in his own defense. Bonilla said that Crowe would leave T.C. alone with him while she ran errands with her younger daughter and that T.C. would watch television, but he denied ever touching T.C. in a sexual manner. He admitted he called T.C. a whore at times. When asked why he went to Texas, he explained he was concerned about his immigration status after Crowe told him to get a lawyer and after he heard rumors of the accusations against him. However, he claimed the main reason he left was because his mother was sick.

The jury found Bonilla guilty as charged, and the trial court later sentenced him to eight years, with two of those years suspended to supervised probation.

Bonilla now appeals, contending the evidence is insufficient to sustain his conviction. In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict. *Id.* We affirm if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* A victim's testimony, even if uncorroborated, is ordinarily sufficient to sustain a child molesting conviction. *Bowles v. State*, 737 N.E.2d 1150, 1152 (Ind. 2000).

To convict Bonilla of Class C felony child molesting, the State had to prove beyond a reasonable doubt that he "did perform or submit to fondling or touching with a child under the age of fourteen years, to-wit: [T.C.,] with the intent to arouse or satisfy the sexual desires of the child or defendant." Appellant's App. p. 8; *see* Ind. Code § 35-42-4-3(b) (2007).

T.C. testified that Bonilla put his hard penis in the crack of her bottom on over fifty different occasions. Bonilla was always alone with T.C. when he perpetrated the abuse, except for one time when T.C.'s little sister was in the room.

Despite this clear evidence, Bonilla argues that T.C.'s testimony is incredibly dubious. Appellate courts may apply the incredible dubiosity rule to impinge upon the jury's function to judge witness credibility. *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007), *superseded by statute on other grounds*. Under this rule, a defendant's conviction may be reversed if: (1) a sole witness presents inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity

and (2) there is a complete lack of circumstantial evidence. *Id.* "Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Id.*

Bonilla claims we must reverse his conviction because T.C. gave conflicting accounts at trial about whether Bonilla had his underwear on or off and whether T.C. had her underwear on or off.

A jury, however, could reasonably conclude that any inconsistencies or uncertainties in T.C.'s testimony about underwear were due to the fact that she was testifying about multiple molestations. Given the sheer number of times Bonilla subjected her to abuse,[3] it is reasonable to conclude that the status of their clothing was not always the same.

More importantly, T.C. never wavered about the fact that Bonilla put his penis in the crack of her bottom on over fifty different occasions. *See id.* at 1209 (rejecting defendant's incredible dubiosity argument, stating: "While equivocations, uncertainties, and inconsistencies appear, they are appropriate to the circumstances presented, the age of the witness, and the passage of time between the incident and the time of her

---

[3] Bonilla also claims T.C. was inconsistent about the number of times he molested her. Appellant's Br. p. 7 ("This may have happened a few times, or 50."). This is a mischaracterization of the evidence. T.C. did not say or even imply that Bonilla may have molested her only a few times. Instead, her testimony was as follows:

> Q.    . . . [D]id this happen one time or more than one time?
> A.    More than one time.
> Q.    Okay. Did it happen more than ten times?
> A.    Yes.
> Q.    Did it happen more than fifty times?
> A.    Yes.

Tr. p. 30. T.C.'s testimony was clear and unequivocal.

statements and testimony. And there is clear, unequivocal testimony from the child that establishes the necessary elements of the charged offense.").

Finally, there is not a complete lack of circumstantial evidence. "Flight and related conduct may be considered by a jury in determining a defendant's guilt." *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001). The evidence shows that Bonilla abruptly left for Texas after he asked Crowe whether he was in trouble, Crowe told him to get a lawyer, and he heard rumors of the accusations. He left his job without notice and did not bother collecting his last paycheck. A jury could reasonably conclude that Bonilla fled the state and that his flight was circumstantial evidence of his guilt.

We thus decline to invoke the incredible dubiosity rule to impinge upon the jury's evaluation of the evidence. The evidence is sufficient to sustain Bonilla's child molesting conviction.

Affirmed.

ROBB, C.J., and RILEY, J., concur.