## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 31 2017, 8:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sir Christopher Lee Jones, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | July 31, 2017 <br><br> Court of Appeals Case No. 49A02-1606-CR-1448 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Sheila A. Carlisle, Judge <br><br> Trial Court Cause No. 49G03-1507-MR-23811 |

**Baker, Judge.**

Sir Jones appeals his conviction for Murder.[1] Jones argues that the prosecutor committed misconduct amounting to fundamental error and that the evidence is insufficient to sustain the conviction. Finding no error and sufficient evidence, we affirm.

## Facts

On July 6, 2015, Gregory Moore was inside his home when he heard "a couple of shots." Tr. Vol. I p. 30. Moore then looked out three big windows at the front of his house. He saw a man, later identified as Lakim Mabry, on the ground on his stomach in the yard adjacent to Moore's. Mabry was attempting to get up when a man ran up to him, knelt down, shot him once in the head, and ran away. Mabry died as a result of his injuries.

After the shooting, Moore described the shooter to police as a Black male, "six one or six two," with lighter skin and dreadlocks. *Id.* at 56, 69-70. Moore got a clear and unobstructed look at the shooter's entire face. While Moore did not know the shooter's name, he had seen him "[e]very day up and down the street" since February 2015, and knew that the shooter drove a blue Ford Explorer. *Id.* at 46. Indianapolis Police Detective Mark Prater created a photo array and showed it to Moore, who identified Jones as the shooter. At trial, Moore identified Jones in the courtroom as the shooter and stated that he was "a hundred percent" certain about the identification. *Id.* at 79. On July 7,

---

[1] Ind. Code § 35-42-1-1.

2015, the State charged Jones with murder and a warrant was issued for Jones's arrest.

[4]     On July 10, 2015, Kansas Highway Patrol Trooper Scott Baker pulled over a speeding vehicle. Trooper Baker noticed that the driver, later identified as Jones, was very nervous, shaking, and sweating despite the fact that the vehicle was cool and the air conditioning was on. Trooper Baker learned upon running Jones's name through the computer that there was a warrant for his arrest out of Indiana. He then arrested Jones and searched the vehicle. He did not find any firearms but did find a phone that belonged to Jones. The phone was first used on July 9, 2015, and had a Kentucky area code. Jones did not have dreadlocks at the time of his arrest.

[5]     When Detective Prater learned of Jones's arrest, he traveled to Kansas to speak with him. Jones informed the detective that he had cut his hair a couple of days earlier. Jones told the detective that he had traveled west because "that's far away." Supp. Tr. p. 22. According to Jones, his girlfriend had driven him to Colorado Springs on July 7, 2015, despite the fact that he knew no one there, had no place to stay, and ended up sleeping on a park bench. Jones admitted that he drives a blue Ford Explorer.

[6]     Jones's jury trial took place on May 16 and 17, 2016. At the close of the trial, during closing argument, the prosecutor made the following statements:

> "One hundred percent," those words were said together one time
> in the course of this trial, and it was yesterday when Greg Moore
> was up on this witness stand and testified. And he was asked:

"How certain are you that the person that you saw shoot and kill Lakim Mabry . . . how sure are you that it was this man right here" he signed the picture on, that he'd seen there many times on 3600 Gale. One hundred percent. One hundred percent.

There was nothing fleeting about him seeing this that day. He had said he'd never seen anything like this before. And for most of us, if we're lucky we haven't either.

We all remember 9/11. We all remember where we were. We all remember when we fist [sic] heard it, when we first saw it.

Tr. Vol. II p. 268. Jones did not object to these statements, and during his closing arguments, his attorney addressed these points:

Let's talk about fleeting. And when I talk about fleeting, I want to talk specifically about the two eyewitness testimony, and that is of Gregory Moore and Sonya Massey. Gregory Moore, a hundred percent. State put it up here big 100 percent certain that my client shot and killed Lakim Mabry.

But in voir dire we talked about certainty versus accuracy. And I can say I'm a hundred percent certain that I saw you at the store the other day. But you weren't there, right? That doesn't make me accurate.

*Id.* at 287-88. At the close of the trial, the jury found Jones guilty as charged. On June 17, 2016, the trial court sentenced Jones to fifty-five years imprisonment. Jones now appeals.

# Discussion and Decision

## I. Prosecutorial Misconduct

Jones first argues that the prosecutor committed misconduct during closing argument by restating Moore's testimony that he was 100 percent certain regarding the identity of Jones as the shooter and making a reference to 9/11.

In reviewing a claim of prosecutorial misconduct, we must determine whether misconduct occurred and, if so, whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014). Where, as here, the defendant waived a prosecutorial misconduct claim by failing to object at trial, to succeed on appeal, he must also establish that the prosecutorial misconduct constituted fundamental error. *Id.* at 667-68. To make a successful claim of fundamental error, the defendant must show that the alleged errors are so prejudicial to his rights as to make a fair trial impossible. *Id.* at 668. To make this showing, the defendant must show that, under the circumstances, the trial court erred in not sua sponte raising the issue because the alleged errors (1) "constitute clearly blatant violations of basic and elementary principles of due process" and (2) "present an undeniable and substantial potential for harm." *Id.*

Here, Jones claims that by restating Moore's testimony that he was 100 percent certain of the identity of Jones as the shooter, the prosecutor impermissibly vouched for the credibility of the witness. We disagree. By referencing

Moore's testimony characterizing his own degree of confidence in his identification of Jones as the shooter, the prosecutor was merely reminding the jury of evidence they had already heard. Our Supreme Court has noted that while a prosecutor may not personally vouch for the credibility of any witness, a prosecutor "may 'comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence.'" *Id.* at 671 (quoting *Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006)). That is precisely what occurred in this case. We see no prosecutorial misconduct on this basis, let alone misconduct amounting to fundamental error.

[10] Jones also argues that by referencing the events of 9/11, the prosecutor was again impermissibly vouching for Moore's credibility. Again, we disagree. The prosecutor used the analogy as a rhetorical device to persuade the jury that Moore's confidence in his identification of Jones was credible because witnessing a murder right in front of his home was the kind of significant event that prompts a person to remember details he might otherwise forget. Here, again, the prosecutor's comments were based on reasons arising from the evidence. The prosecutor was merely fulfilling the "duty to present a persuasive final argument," *id.* at 667, and we find no error on this basis.[2]

---

[2] Jones makes an offhand suggestion of an argument that Moore's testimony that he was 100 percent confident in his identification was improperly admitted. Jones does not develop a cogent argument, failing even to recite the rules or standard of review regarding admission of evidence, so he has waived it. Waiver notwithstanding, we note that the concerns raised in the out-of-state cases cited by Jones do not apply to this case. Moore was not providing testimony regarding statistical probability or quantification; he was simply

# II. Sufficiency

[11] Jones also argues that the evidence is insufficient to support the conviction. When reviewing a claim of insufficient evidence, we will consider only the evidence and reasonable inferences that support the conviction. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We will affirm if, based on the evidence and inferences, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). To convict Jones of murder, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally killed another human being. I.C. § 35-42-1-1. Jones contends that the State failed to prove beyond a reasonable doubt that he was the person who shot and killed Mabry.

[12] The evidence in the record supporting the jury's conclusion that Jones was the shooter is as follows:

- Moore heard gunshots and saw Jones shoot Mabry in the head. Moore had a clear and unobstructed view of the shooting and saw Jones's entire face.
- Moore recognized the shooter as someone he saw every day on his street, provided a description that matched Jones at the time, told police that Jones drove a blue Ford Explorer, and identified Jones as the shooter from a photo array and again in court.
- Following the murder, Jones cut his hair by removing his dreadlocks and obtained a new cell phone with a Kentucky area code. He then fled to Colorado even though he did not know anyone in that state and had to

---

testifying as to his degree of confidence in his belief that Jones was the shooter. This testimony was not improperly admitted.

sleep on a park bench when he arrived. When he was pulled over by police in Kansas for a traffic stop, Jones was very nervous, shaking, and sweating.

This evidence is sufficient to support the jury's determination that Jones is guilty of murder. *See Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001) (holding that "flight and related conduct may be considered by a jury in determining a defendant's guilt"). Jones directs our attention to alleged discrepancies in Moore's testimony, as well as discrepancies between Moore's testimony and other evidence in the record. This amounts, however, to a request that we reweigh the evidence, which we may not do. It was for the jury to weigh the evidence and assess Moore's credibility, and nothing in this record leads us to second-guess the jury's ultimate determination in this case.[3]

[13] The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.

---

[3] Jones makes an offhand suggestion of an argument that the photo array that police showed to Moore and Massey was unduly suggestive. Jones does not develop a cogent argument, failing even to recite the rules or standard of review regarding photo arrays, so he has waived it. Waiver notwithstanding, the photo array contained six photos; five of the photos were booking photos while Jones's was a BMV photo. No other features of Jones's image distinguish it from the other five in appearance and nothing else about the array or behavior of law enforcement is alleged to be unduly suggestive. Therefore, the photo array was not problematic. Furthermore, Moore also identified Jones in court as the shooter. Moore was able to describe Jones accurately, including the type of vehicle he drove, and had an unobstructed and clear view of the shooting and Jones's entire face. Consequently, his identification of Jones in court was sufficiently reliable that even if the array had been problematic, any error was harmless. Therefore, this argument is unavailing.